**PACIFIC INSURANCE COMPANY OF NEW YORK, Plaintiff,**

v.

**Emmet J. BLOT, Defendant.**

**No. 67 Civ. 1386.**

United States District Court
S. D. New York.

May 1, 1967.

Lord, Day & Lord, New York City, for plaintiff, John W. Castles 3d, New York City, of counsel.

Shea, Gallop, Climenko & Gould, New York City, for defendant, Ralph L. Ellis, New York City, of counsel.

Philip A. Loomis, Jr., Gen. Counsel, and Walter P. North, Associate Gen. Counsel, Securities and Exchange Commission, Paul J. Kemp, Washington, D. C., as amicus curiae.

OPINION

HERLANDS, District Judge:

Plaintiff moves, by an order to show cause, for a preliminary injunction restraining defendant and his agents "from using or relying on any shares" of the plaintiff corporation acquired in violation of the federal securities laws "and from exercising any rights claimed to arise out of said shares for any purpose whatsoever, including, without limitation, for the purpose of compelling the disclosure of the stock records" of the plaintiff corporation in a proceeding

now pending in the Supreme Court of the State of New York.

Had this motion presented the simple question of whether a corporation can bring an action based on a Rule 10b-5 [1] violation in a securities transaction to which it was not a party—and had it been argued one month earlier—this Court would not have hesitated in denying the relief requested. Birnbaum v. Newport Steel Corp., 193 F.2d 461 (2d Cir.), cert. denied, 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952); Hoover v. Allen, 241 F.Supp. 213 (S.D.N.Y.1965). Cf. O'Neill v. Maytag, 339 F.2d 764 (2d Cir. 1964) aff'g 230 F.Supp. 235 (S.D.N.Y.); Hornstein, Corporations, 1966 Annual Survey of American Law 97, 100 nn. 23 & 25 and accompanying text.

But because it arises in a procedural setting akin to Studebaker Corp. v. Gittlin, 360 F.2d 692 (2d Cir. 1966), and follows after the recent decisions in Vine v. Beneficial Finance Co., 374 F.2d 627 (2d Cir. 1967), and A. T. Brod & Co. v. Perlow, 375 F.2d 393 (2d Cir. 1967), a temporary restraining order was issued to enable the Court to study the matter more carefully, and to permit the Securities and Exchange Commission to brief the questions presented. In addition, to preserve the status quo between the parties, a stockholders' meeting of the plaintiff corporation, tentatively scheduled for May 15, 1967, was ordered adjourned until May 31, 1967.

We can assume, without deciding the question, that the complaint alleges sufficient facts to support a finding on this motion that the defendant, personally or through his agents, violated § 10 of the Securities and Exchange Act and Rule 10b-5 promulgated thereunder—at least [2] by making affirmative misrepresentations in the course of purchasing several blocks of shares from various stockholders of the plaintiff corporation. The crucial issue remains whether the corporation—which was a complete stranger to the transactions—has standing to maintain this action under federal law. While the present action procedurally approximates Studebaker Corp. v. Gittlin, supra, in that both involve a corporation seeking to enjoin a shareholder—on the basis of an alleged violation of federal securities laws—from obtaining a stockholders' list in a state proceeding, the substantive distinction between the two cases is fatal to the plaintiff's claim here.

In *Gittlin*, the corporation was permitted to enjoin the defendant from making use of authorizations solicited from shareholders in violation of the proxy rules. That decision rests on the sound authority of J. I. Case Co. v. Borak, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964), which upheld the right of a stockholder to sue derivatively for a violation of the proxy rules resulting in corporate action damaging to the corporation.[3] And although, in *Gittlin*, no transaction damaging to the corporation was proposed, "and the struggle, at least on the surface, [was] simply for control," the Court found ample authority in the legislative history of the *federal proxy rules* to support its conclusion that the impairment of corporate suffrage by itself was a sufficient injury.

1. 17 C.F.R. § 240.10b–5 (1964). Rule 10b–5 was promulgated by the Securities and Exchange Commission under § §10(b) of the Securities Exchange Act of 1934.

2. The Court entertains grave doubt whether the alleged failure by the defendant, an "outsider," to disclose to selling shareholders the impending tender offer, or the failure to make public the prices paid on most of the transactions, constitutes a violation of Rule 10b–5. These are questions the Court need not decide. It is worth noting, however, that several recent law review articles suggest that present federal law provides inadequate regulation of tender offers. Sowards & Mofsky, Corporate Take-Over Bids, Gap in Federal Securities Regulation, 41 St. John's L.Rev. 499 (1967); Fleischer & Mundheim, Corporate Acquisition by Tender Offer, 115 U.Pa.L.Rev. 317 (1967); Cohen, A Note on Takeover Bids and Corporate Purchases of Stock, 22 Bus.Law. 149 (1966).

3. Obviously, if a derivative suit will lie, the corporation itself may sue.

In sharp contrast, as the Commission observes in its amicus curiae Memorandum here, "the fact that shares were allegedly acquired in violation of Rule 10b-5 has no such direct connection with the exercise of voting and similar rights." (p. 10.)

Until Vine v. Beneficial Finance Co., supra, it generally had been assumed, on the authority of Birnbaum v. Newport Steel Corp., supra, that only a defrauded purchaser or seller may maintain an action under Rule 10b-5. In *Vine*, however, the plaintiff stockholder was allowed to maintain an action for damages he suffered as a result of fraud perpetrated upon his fellow shareholders, although he himself had not been deceived. And in A. T. Brod & Co. v. Perlow, supra, the plaintiff was deceived not as to the value of the securities purchased but as to the intention of the defendants to pay for them. Clearly, these two cases suggest a relaxation of the principles laid down in *Birnbaum* and other decisions which followed it. Nevertheless, it may be noted that in both *Vine* and *A. T. Brod & Co.*, the plaintiff was found to be a purchaser or seller.

Interpreting *Vine* and *A. T. Brod & Co.* most liberally, however, the Court does not find any basis for concluding that a corporation—which has neither been defrauded nor damaged—has standing under Rule 10b-5. If there was any fraud perpetrated here, clearly it was against the selling shareholders. Moreover, where the alleged violation falls under Rule 10b-5 as opposed to the proxy rules, the possible disclosure of a stockholders' list is not such an injury to the corporation as will justify granting the extraordinary relief requested. The chain of causality between the alleged violations of Rule 10b-5 and some ultimate supposititious injury to the corporation is too tenuous and speculative to support this drastic federal remedy. As the Commission noted: "It cannot be presumed that, if the defendant should acquire control by means of a proxy contest after making full disclosure to the shareholders, injury to the corporation would necessarily follow." (Memorandum of the Commission, p. 10). In any event, the Court need not speculate about the defendant's motives in seeking a stockholders' list, for that matter raises a question of state law cognizable in the state proceeding.

Finally, the Court notes its concurrence with the Commission's view that permitting the corporation to disable a purchaser from exercising his rights as a shareholder under state law—even if his purchase violated Rule 10b-5—"seems unnecessarily drastic and potentially unsettling for the securities markets and corporate affairs." (Memorandum of the Commission, p. 9.) While the defrauded sellers might succeed in obtaining rescission, clearly the shares are not void.

Plaintiff's motion for a preliminary injunction should be, and is hereby, denied in all respects.

So ordered.