Rose SCHWABENBAUER, Plaintiff,

v.

BOARD OF EDUCATION OF the CITY SCHOOL DISTRICT OF the CITY OF OLEAN, and Harry S. Leonelli, Charles L. Kinney, Mary Chicola, Martin Faragher, Della Moore, Edward H. Radigan, Paul J. Schafer, John J. Sheehan, Norman R. Utecht, all as members of the Board of Education of the City School District of the City of Olean, Defendants.

No. CIV–77–588.

United States District Court, W. D. New York.

Oct. 2, 1980.

Bernard F. Ashe, Albany, N. Y. (Emanuel Tabachnick, Williamsville, N. Y., of counsel), for plaintiff.

Hodgson, Russ, Andrews, Woods & Goodyear, Buffalo, N. Y. (H. Kenneth Schroeder, Jr., Buffalo, N. Y., of counsel), for defendants.

## MEMORANDUM and ORDER

ELFVIN, District Judge.

In this action, brought under Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.) and charging discrimination on account of sex, defendants and plaintiff have cross–moved for summary judgment on the evidentiary support of two stipulations of fact. They have agreed that such stipulations constitute all the evidence in this case and that, accordingly, I should grant summary judgment on the existing record for one party or the other. I hold that plaintiff has established a violation of Title VII.

■ Familiarity with my Memorandum and Order entered March 15, 1978, which sets forth at pages 1–2 the relationship between plaintiff and defendants within the structure of New York's changing public school teacher tenure statutes, is assumed. Such relationship is confirmed in the first stipulation of facts and needs no further explication. The two stipulations of fact show that in two earlier cases substantial leaves of absence had been given to two female teachers because of injury or illness and that such leaves did not affect the time when they were respectively granted tenure. The first such instance was that of one Mary Elizabeth Smith who had been appointed in September 1952, had been absent due to an injury from December 1, 1952 to March 26, 1953 and yet had been granted tenure effective September 1, 1955. Defendants argue strenuously that this incident may not be considered because of its sheer remoteness in time and because it antedated the Civil Rights Act. Neither of these contentions is meritorious. Use of evidence dating from substantially prior to the effective date of the Civil Rights Act is often necessary to show an employment practice or policy. See, e. g., United States v. Jacksonville Terminal Company, 451 F.2d 418, 439 (5th Cir. 1971). Defendant offers no factual support for its contention that this incident is not fully reflective of a policy then and now in force; it has not shown, although such evidence would clearly be available to it if it existed, that the legal or factual framework of tenure decisions had sufficiently changed since 1955 to render this incident not relevant, that there were other and more recent incidents failing to support an inference that there then and now existed such a policy, or that defendant had formally established or amended its policy in the interim. I conclude that this evidence re Smith is material and of probative weight. The parties also have stipulated that one Kathryn Kenney had been hired at the same time as had plaintiff (September 1, 1968), had not reported for work (due to illness) until December 6, 1968 and yet had been granted tenure September 1, 1971. These two stipulated events comprise the total factual record herein. My decision must be based on these facts, on whatever inferences I may permissibly draw from them and on the law of Title VII.

■ To begin, defendants' granting tenure to Kenney on September 1, 1971 shows that they have not consistently relied on the school district's *ability* under New York's Education Law (*see, In re Luchans*, 2 Ed. Dept.Rep. 424, 426 (1963)) to toll the running of the probationary period during "substantial leaves of absence." Its failure to invoke this power in Kenney's case prevents it from doing so in the case at bar if such invocation would otherwise be discrimination actionable under Title VII.

Defendants next argue that the instant record, which shows only that two *female* teachers who were disabled by illness or injury received credit for leaves of absence in computing their probationary period while the female plaintiff did not receive such credit, fails to show discrimination on account of *sex*, but demonstrates mere discrimination among women. *See, e. g., Stroud v. Delta Air Lines, Inc.*, 544 F.2d 892 (5th Cir.), *cert. denied*, 434 U.S. 844, 98 S.Ct. 146, 54 L.Ed.2d 110 (1977). The cases cited by defendants in support of this argument are not apposite to the situation at bar. In *Stroud* and similar cases, it was held that even blatant forms of discrimination (such as compelled resignation on account of marriage) imposed on flight attendants/stewardesses were not actionable under Title VII of the Civil Rights Act because defendants then hired *no* male flight attendants and there was, therefore, as a matter of logic, no possible discrimination against females in favor of males by reason of the challenged policy. As was succinctly stated in *Stroud*, "[m]en were not favored over women; they simply were not involved in the functioning of the policy." *Id.*, at 893. Here, although the pleadings and stipulations are silent on this point, I avail myself of judicial license and presume that defendants employ both men and women as school teachers. *Stroud* and similar cases simply do not apply.

However, at an evidentiary level, defendants' argument is tenable and substantial. The record herein, on its face, shows only that two female teachers received credit for leaves of absence while the female plaintiff did not. Defendants argue that plaintiff has therefore failed to establish the disparate treatment *between* the sexes necessary to state a claim under Title VII. However, because I am, as a trier of fact, not limited to the bare record but may draw reasonable inferences therefrom, defendants' argument must fail. It is true that Smith and Kenney were females. However, the reasons for their leaves of absence seem unrelated to their sex. Defendants were free to introduce any evidence that any probationary teachers were not credited with time accruing during a (non–pregnancy related) disability leave, which would rebut the inference that defendants had an unwritten policy of inclusion of such times; they were also free to introduce any evidence that male teachers would not have been given the same treatment as Smith and Kenney or that the causes of Smith's and Kenney's disabilities could not with equal frequency occur to men and women. Proof of either would rebut the otherwise permissible inference that the defendants' policy of including the time period of substantial disability leaves of absence in computing a teacher's probationary period was sex–neutral with the sole exception of disability leaves on account of pregnancy. In the total absence of any such rebuttal, the stipulated evidence, although small in volume, does allow me to draw the inferences just noted: that defendants had an informal, unwritten, generally sex–neutral policy of including disability leave time but that such policy was not extended to leaves due to pregnancy.

■ As noted in my earlier Memorandum and Order denying defendants' motion to dismiss, which memorandum is now law of the case, the denial to plaintiff of credit for time accrued while on pregnancy leave, with the resulting extension of her probationary period from three to five years, "burdens" plaintiff in a manner analogous to the loss of accrued seniority presented in *Nashville Gas Co. v. Satty*, 434 U.S. 136, 98 S.Ct. 347, 54 L.Ed.2d 356 (1977). *Satty* establishes that, if an employer has a certain policy relating to disability, a failure to give equivalent treatment to pregnancy is a violation of Title VII if that policy burdens pregnant women. I have inferred from the

record herein that such a policy exists and it is undisputed that it was not applied to the pregnant plaintiff; plaintiff has established a *prima facie* case under Title VII.

This requires that defendants show that the disparate treatment was due to valid neutral, non–discriminatory reasons. Defendants' counsel argues that defendants validly *could have* distinguished between plaintiff's service and that of Smith and Kenney on the grounds that the latters' leaves were shorter than plaintiff's and because their leaves occurred at or near the commencement of their respective probationary periods, while plaintiff's occurred almost at the midpoint of her probationary period, making a proper evaluation more difficult in plaintiff's case. These arguments are plausible; however, they are unsupported by evidentiary material. To rebut a plaintiff's *prima facie* case under Title VII of the Civil Rights Act, a defendant is obliged to introduce evidence that a neutral reason or reasons were the reasons for the disparate treatment, not merely to speculate that they might have been. Defendants have failed to rebut plaintiff's *prima facie* case.

■ Defendants next argue in effect that, even if plaintiff succeeds in establishing that her leave period must legally be included in her probationary period, which period accordingly would have ended September 1, 1971, plaintiff still has not established a right to recover anything because defendants terminated plaintiff the following May. An essential component of defendants' argument is the claim that a normal principle of New York's Education Law known as "tenure by acquiescence" (wherein a teacher who finishes her or his statutory probationary period without formally being terminated achieves tenure automatically, thereby forcing school districts to make a formal decision *before* the end of the probationary period) does not apply in the special time periods set up as part of the legislative extension of the probationary period in 1971 and 1972. Such a contention was wholly rejected by the New York State Commissioner of Education in *Matter of the Reopening of the Appeal of Ginsburg*, 13 Ed.Dept.Rep. 5, 7 (1973). Such an administrative interpretation is entitled to great weight. Defendants' argument is not supported by either the language of the statute or anything else disclosed either by the parties or my own research. I conclude that the Commissioner's interpretation is correct.

Accordingly, I must hold that plaintiff's probationary period ended September 1, 1971 and that on that date plaintiff acquired tenure. Accordingly, it is hereby ORDERED that plaintiff's motion for summary judgment is granted. Neither plaintiff nor defendants (except for plaintiff in the Complaint) has appeared to address the question of remedy. In addition, plaintiff may be entitled to a reasonable attorney's fee, which was demanded in the Complaint. Accordingly, it is hereby ORDERED that counsel for all parties hereto shall appear in Part II of this court October 20, 1980, at 11:00 in the forenoon, to set a date for a hearing concerning the qualitative and quantitative aspects of her remedy. The matter of the allowability of reasonable attorney's fees will be part of such presentation and, if I allow such, plaintiff will be required within a specified subsequent time period to prove the amount of the same.